IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**KOGAP Enterprises, Inc.,**
*an Oregon Corporation*

                Plaintiff,

      v.

**CITY OF MEDFORD,**

                Defendant.

Case No. 1:22-cv-01468-CL

**OPINION AND ORDER**

CLARKE, Magistrate Judge

Plaintiff KOGAP Enterprises Inc., ("KOGAP") brings this cause of action against the defendant, the City of Medford ("the City"), alleging an unconstitutional taking under state and federal law, arising out of a series of land use proceedings. The case comes before the Court on the parties' cross motions for summary judgment. Full consent to magistrate jurisdiction was entered on September 29, 2023 (#33). For the reasons below, Plaintiff KOGAP's Motion for Summary Judgment (#36) is DENIED and the City's Motion for Summary Judgment (#37) is GRANTED.

## BACKGROUND[1]

Plaintiff is an Oregon corporation and owner of various parcels of real property, including a parcel known as the Stewart Meadows Village Planned Unit Development ("PUD").

---

[1] Facts in this section are contained in the record (#34, #35) and generally undisputed unless otherwise indicated.

Page 1 – OPINION AND ORDER

In 2017, Plaintiff secured a PUD Revision Approval for Stewart Meadows Village from the City of Medford, under the terms of which all street dedications required of Plaintiff were: (A) Garfield Street, which required a right-of-way width of 100 feet, and (B) Anton Drive, which required a right-of-way width of 63 feet. The 2017 Approval specified that those required street sections improvements were completed and stated:

> No additional right-of-way is required*** no additional public improvements are required except as noted under Section A(4), Transportation System.

In 2020, Plaintiff sought a land division approval for various parcels within the PUD. The City then sought to impose a new condition requiring that Myers Lane south of Garfield Street connect to Anton Drive (the "Myers Lane extension") and requiring a bridge crossing of Hansen Creek. Plaintiff estimated at the time that the cost for the condition's required construction would be approximately $2 million. Plaintiff registered objections to this "improper condition." Ultimately, the Medford City Attorney's Office recommended to its governing body that such "imposition of the connectivity conditions required by public works would most likely not survive a legal challenge." *Id.* The condition was removed prior to approval.

In 2022, Plaintiff made another application for changes to its PUD plan (the "2022 Application"), including a tentative plat for 151-lot subdivision, and a Zone Change Request to change an approximately 5-acre tract of land from light industrial (I-L) to community commercial (CC), and to change another approximately 5-acre tract of land from CC to I-L. The City sought to impose the Myers Lane extension and bridge crossing condition as part of its approval of the 2022 PUD plan zone-swap. Plaintiff objected to the condition once again.

The City re-evaluated its prior opinion regarding the legality of the condition in the context of the 2022 Application. This time, the estimated cost for construction of the bridge was

projected to be between $300,000 and $350,000, instead of $2 million. In addition, the City proposed to reimburse Plaintiff $150,000 towards the cost for the bridge crossing, reducing that cost further. The City also concluded that the zoning swap and the changes in building types and uses in the application, from strip-style retail to three drive-through restaurants and a smaller retail building, would cause "more auto-oriented travel in the area near Anton Drive and Garfield Street." AR Ex. 1-C (#34-3 at 23-25); *see also id.* at 75-77. The City Planning Commission determined that this change made the proposed condition – the Myers Lane extension and the bridge crossing – more necessary in 2022 than the prior approval in 2020.

The City decided to impose the condition as part of the 2022 Approval, appropriately summarized as:

> an extension of Myers Lane from the Stewart Meadows Village PUD to the existing Myers Lane and the payment of a $150,000 bond to support the construction of a bridge over Hanson Creek that would complete the connection from Plaintiff's development to the residential development to the west (hereinafter the "Myers Lane Extension").

City Response (#47) Ex. 1, pp. 3, 5-7. KOGAP appealed the condition, and the City Council affirmed.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d

796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Both parties move for summary judgment on all claims. While the Oregon Constitution provides a separate basis for granting relief, essentially all of Plaintiff's remaining claims assert that, by imposing the Myers Lane extension and bridge construction as a condition of the 2022 Approval, the City exacted a "taking" under the Fifth Amendment of the United States Constitution. For the reasons below, the City of Medford is entitled to summary judgment on these claims.

**I.       The condition imposed by the 2022 Approval was not an unlawful taking.**

The Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." Unlawful exactions are a subset of unlawful takings under the Fifth Amendment. An "exaction" is a "concession sought by the government, or the condition upon which granting the permit depends." *Garneau v. City of Seattle*, 147 F.3d 802, 809 (9th Cir. 1998). The Supreme Court in *Koontz* explained:

> By conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation. ...So long as the building permit is more valuable than any just compensation the owner could hope to receive for the right-of-way, the owner is likely to accede to the government's demand, no matter how unreasonable. Extortionate demands of this sort frustrate the Fifth Amendment right to just compensation, and the unconstitutional conditions doctrine prohibits them.

*Koontz v. St. Johns River Water Mgmt.* Dist., 570 U.S. 595, 605, 133 S. Ct. 2586, 2595 (2013).

*Nollan* and *Dolan* established a two-part test to determine whether a land use condition is an unlawful taking. First, the Court must determine whether an "essential nexus" exists between a "legitimate state interest" and the permit condition imposed by the city. *Dolan v. City of Tigard*, 512 U.S. 374, 386, 114 S. Ct. 2309, 2317 (1994). If such a nexus exists, the Court must decide whether there is "rough proportionality" between the exaction and the projected impact of the proposed development. *Id.* at 386. The burden is on the city to justify that the required condition satisfies the *Nollan/Dolan* analysis. *Id.* at 391 fn. 8. If a city satisfies *Nollan/Dolan*, the risks of any "extortionate demands," as contemplated by *Koontz*, are eliminated.

The Medford Land Development Code ("MLCDC") recognizes these mandates and incorporates the *Nollan/Dolan* standard into the City Code:

> Limitation of Exactions.
> Notwithstanding any other provisions of this Chapter 10, an applicant for a development permit shall not be required, as a condition of granting the application, to dedicate land for public use or provide public improvements unless:
> (1) the record shows that there is an essential nexus between the exaction and a legitimate government purpose and that there is a rough proportionality between the burden of the exaction on the developer and the burden of the development on public facilities and services so that the exaction will not result in a taking of private property for public use, or

> (2) a mechanism exists and funds are available to fairly compensate the applicant for the excess burden of the exaction to the extent that it would be a taking.

MLDC 10.668.

> The burden of proof and supporting findings of fact and conclusions of law for the criteria in Sections 10.190(4) or 10.196(4), as applicable, shall be strictly limited to the specific nature and magnitude of the proposed revision.

MLDC 10.198(1)(c).

As discussed below, the Court finds that an essential nexus exists between a legitimate government interest and the condition imposed, and there is rough proportionality between the condition imposed and the projected impact of the development. The conditions imposed by 2022 Approval do not violate the Takings Clause.

### A. An essential nexus exists.

An essential nexus exists between the City's legitimate government interests and the permit conditions imposed by the 2022 Approval.

#### 1. The City has a legitimate government interest.

The City has a legitimate government interest in a proposed development's compliance with City Code provisions that promote connectivity and a balanced transportation system, and a legitimate government interest in preventing congestion on its major arterial roadways.

"A governmental interest is one that would permit the denial of a permit when it is legitimate one—such as managing traffic congestion—and the project's impacts standing alone, or in combination with the impacts of other construction, would substantially impede that legitimate interest." *Hill v. City of Portland*, 293 Or App 283, 290 (2018). In *Dolan*, the city required the applicant to dedicate a portion of his property for flood control and traffic improvements. The Supreme Court held that there was an "essential nexus" between those

requirements and the legitimate state interests of preventing flooding and reducing traffic congestion. *Dolan*, 512 U.S. at 387, 114 S.Ct. 2309.

First, the City points to MLDC 10.426, which establishes maximum block lengths allowed for new developments under the City Code. This provision demonstrates "the public need for promoting connectivity and a balanced transportation system by establishing block standards to ensure that streets are constructed or extended in projections that maintain their function, provide accessibility, and continue an orderly pattern of streets and blocks." AR Ex. 1-A (#34-1 at 50-51). In assessing KOGAP's 2022 Application, the City found that the proposed development did not comply with the maximum block lengths of MLDC 10.426. *Id.* at 53.

Defendant KOGAP argues that the City Code cannot supersede the Takings Clause. KOGAP misunderstands the function of the City's reference to MLDC 10.426. The City Code provision does not supersede the *Nollan/Dolan* analysis, nor does it, on its own, create an "essential nexus." The maximum block lengths provided by MLDC 10.426 merely demonstrate a legitimate governmental interest in functional, accessible, and orderly patterns of streets and blocks. Whether or not an essential nexus exists between this legitimate interest and the condition being imposed is a secondary concern, discussed below. Here, the City Code provision requiring maximum block lengths adequately identifies a legitimate governmental interest in promoting connectivity and a balanced transportation system.

Second, the City considered the impacts of the proposed development in combination with the other planned construction in the surrounding area. This is an acceptable consideration, as Oregon courts have held that "the inquiry is necessarily forward-looking; it properly considers reasonable projected impacts from permitted uses of the development, rather than being limited to impacts from a single permitted use." *Hallmark Inns & Resorts, Inc. v. City of Lake Oswego*,

193 Or. App. 24, 37, 88 P.3d 284, 291 (2004). In this case, the surrounding area relevant to the 2022 Application consists of multiple residential developments, both currently in existence and planned for development. AR Ex. 1-A (#34-1 at 53). In considering the application's impacts, the City found it likely that residents from the planned developments to the south and west of the Stewart Meadows development will have no alternative option but to use Garfield Street in order to access the development. AR Ex. 1-C (#34-3 at 23-26). Garfield Street is a major arterial roadway with limited access points. The City has a legitimate interest in preventing traffic congestion on its major arterial roadways, and it can take this into account when considering the 2022 Application.

Third, KOGAP argues that the City has failed to show that this government interest is legitimate because KOGAP's traffic data indicates that the 2022 Application will not cause more traffic than the previously approved application. KOGAP's traffic engineer, Kelly Sandow, determined that "the subject application will have essentially no impact on traffic in the area" because "the ITE Trip Generation Methodology" indicated that zero "new trips" on the adjoining roadways would be created by the 2022 Application changes. AR Ex. 1-C (#34-3 at 78).

The City concedes that no "new trips" would be created, but disagrees with the conclusion that this signifies "essentially no impact on traffic." The City points to exhibits in the record showing that the 2022 Application:

> includes significant modifications to the building uses along Anton Drive that are more auto-oriented uses, including drive-through restaurants as well as a proposed subdivision of Phase 5 (the tract of land south of Garfield Street, abutting where Myers Lane is currently stubbed to adjoining property to the west).

AR Ex. 1-C (#34-3 at 23); AR Ex. 1-A (#34-1 at 53). When asked to explain "auto-oriented uses," at the oral argument hearing, counsel for the City noted that more cars would be diverted

off of Garfield Street and into the development to use the drive-through restaurants. This actually coincides with one of Sandow's findings, which state that "nearly 75% of the trips generated by the proposed changes will be from users already on Garfield Street and Highway 99," though Sandow concluded that "the trip demand on the system from the fast-food restaurants is significantly less than the trip demand on the system from the currently-approved strip-style retail use in that area of the development." AR Ex. 1-C (#34-3 at 78). Sandow agreed with the premise, however, that fast-food restaurants are "high-trip generators to the site." *Id.* The City reached the opposite conclusion with the same information, finding that, even if "new trips" are not created, more congestion in the area could result from the vehicles pulled off the road and into the development. The City also considered that the trips generated by the development as a whole were expected to burden this area to a significant extent. AR Ex. 1-C (#34-3 at 29).

> The City rejected the majority of the other findings in the Sandow Memo:
>
>> First, the memo assumed trip estimations without providing sufficient data or basis for these assumptions. The memo also made assumptions about future trips from the development of three parcels west of the Stewart Meadows development but failed to account for the future development along the planned extension of Holly Street. AR Ex. 1-C (#34-3 at 23-24).... Public Works additionally stated that the applicant's analysis failed to account for employees and patronages of the restaurants and retail spaces that will also be utilizing the transportation system to access the development. AR Ex. 1-C (#34-3 at 31).

City Resp at pg. 6 (#47). The City also considered that local residents who choose to walk or bike from the neighboring developments would likely prefer the convenience and safety of using a residential street such as Myers Lane as opposed to Garfield Street, which is a major arterial roadway. *Id.* Finally, the City concluded that the estimated number of new trips does not change the fact that the Application did not comply with MLDC 10.426 and maximum block lengths.

The Court finds that the City can reasonably rely on its Public Works staff analysis and conclusions of the information at hand regarding the 2022 Application, as well as the opinions of the Planning Commission to assess the potential impacts of the application. There is no support for the notion that the City was required to accept KOGAP's traffic engineer's conclusions, and, in this case, the City has given sufficient reasons to reasonably discount those conclusions.

For all three reasons, the City has shown that it has a legitimate government interest in KOGAP's compliance with City Code provisions that promote connectivity and a balanced transportation system, and the City has a legitimate government interest in preventing congestion on its major arterial roadways.

### 2. The City reasonably concluded that the legitimate interests were impeded by the changes proposed by the 2022 Application.

The City must also show that the legitimate government interests identified will be substantially impeded by the impacts of the land use application. *Hill v. City of Portland*, 293 Or App 283, 290-291 (2018) (finding that the city failed to carry its burden under *Nollan/Dolan* because the City simply identified a government interest but failed to examine how the impacts of the land use application would substantially impede that interest). In this case, the City specifically found that KOGAP's continued failure to comply with MLDC 10.426 would substantially impede the City's interest in maintaining a balanced transportation system and street connectivity because the zone swap and other changes proposed by the 2022 Application would attract more auto-oriented uses to the area but would not allow for local traffic from nearby residential areas and planned subdivision developments. Thus, the City reasonably determined that its legitimate government interests would be impeded.

### 3. An essential nexus exists between these legitimate interests and the conditions imposed.

After identifying a legitimate governmental interest, the Court must determine whether an essential nexus exists between that interest and the conditions being imposed. The "essential nexus" question "is not whether certain governmental goals will be upheld or struck down. Rather, courts must examine the nexus between the condition imposed and the interests that the local government asserts would allow it to deny the application." *Brown v. City of Medford*, 251 Or. App. 42, 55, 283 P.3d 367, 374 (2012). Here, as to the City's interest in compliance with the block length standards contained in MLDC 10.426, the condition to extend Myers Lane would bring the 2022 Application into compliance with the City Code, and it would remedy the legitimate government interests of local street connectivity impeded by the development's noncompliance. Specifically, the City found that, "Myers Lane, which parallels Garfield Street, will help maintain the function and capacity of the road network while providing efficient, safe, and convenient vehicular and pedestrian circulation on a lower-volume street." *Id.* at 25. Thus, the proposed changes to the development will result in more cars being diverted off the main road and into the development's drive-through restaurants. The area needs more alternative routes to allow for more connected local travel. The Myers Lane extension and bridge crossing provide that alternative, connected route. The essential nexus between the two is clear.

KOGAP argues that an essential nexus cannot exist because the broader development was already approved prior to the 2022 Application, notwithstanding the project's failure to comply with MLDC 10.426. The City did consider including the Myers Lane extension and bridge crossing as a condition of a prior application's approval. However, the estimated cost at that time was $2 million, and the City determined that such a burden would be a disproportionate and unconstitutional taking. The City now argues that, due to the impacts of this specific application – the zoning swap and the drive-through restaurants in particular – continued non-compliance

with the City Code would more severely impede the governmental interest identified in MLDC 10.426. Additionally, the projected cost has been significantly reduced since the prior application. The Court finds that these are sufficient changes – both regarding the impacts of the proposed development, and, as discussed below, in the rough proportionality of the burdens imposed on both parties. The City is not legally precluded from re-assessing whether a previously considered condition can be imposed with a new application. No precedent or caselaw exists to bar such reconsideration, as long as the condition meets the *Nollan / Dolan* standard at the time that it is imposed.

### B. Rough proportionality exists between the permit conditions and the projected impacts of the 2022 Application.

After determining that an essential nexus exists, the Court must decide whether there is "rough proportionality" between the conditions and the projected impacts of the proposed development. When determining rough proportionality, "[n]o precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impacts of the proposed development." *Dolan*, 512 U.S. at 391. The Oregon Land Use Board of Appeals has determined that "only those impacts that reasonably flow from the approval granted may be considered when imposing exactions to ameliorate the impacts of that approval." *McClure, v. City of Springfield*, 37 Or LUBA 759, 764, 2000 WL 33269820, at *4, *aff'd*, 175 Or. App. 425 (2001), *rev. den.*, 334 Or. 327 (2002) (citing *Schultz v. City of Grants Pass*, 131 Or. App. 220, 222, 884 P.2d 569, 570 (1994)). Upon review, the Oregon Court of Appeals noted "the quandary facing a local government that attempts to justify a street exaction under *Dolan*." *McClure*, 175 Or App at 435. Indeed, "the rough-proportionality test requires a comparison of "different kinds of things," which makes it difficult to quantify. *Id*. at 436.

Here, as discussed above, the City individually assessed KOGAP's 2022 Application and its impacts, determining that the lack of compliance with MLDC 10.426 impeded the public interest of having local connectivity and a balanced transportation system; the lack of a local street connection as an alternative route to Garfield Street would impede the public interest of preventing traffic congestion on its major arterial roadways. The City concluded that the conditions imposed – the Myers Lane extension and the bridge crossing – would specifically ameliorate those impediments.

The City then considered the burden of the condition on KOGAP, and the benefits that would be conferred on KOGAP's own developments resulting from the condition. First, the City noted that KOGAP will have significant flexibility and control over how it chooses to extend Myers Lane, which would help KOGAP keep costs low. AR Ex. 1-C (#34-3 at 31). Moreover, the development had already planned to build a parking lot in the space required for the dedication, therefore the City estimated that the burden on KOGAP would be relatively low compared to other planned uses. *Id.* ("Any increase of cost to comply with public or private street requirements is incremental over the cost of the pavement of the parking lot already proposed.").[2] The City found that the condition for the 50% contribution ($150,000) toward the bridge over Hanson Creek to complete the extension was the only monetary cost not already contemplated by the applicant's site plan. *Id.* In particular, the City found that the overall "relatively low" cost to KOGAP was a material distinction from the prior application, where the record at the time contained the assertion that the condition would cost $2,000,000.

---

[2] KOGAP argues that there are other, less obvious burdens associated with the loss of its planned parking lot, including the functionality of the lot for large trucks, and the loss of the parking spaces available for the planned businesses on the site. It is unclear how the City should have quantified these burdens for the purposes of the rough proportionality analysis, however.

The City also compared the square footage of right-of-way dedications and street improvements for the Stewart Meadows development to other similar developments. The City used comparable right-of-way dedications to find the Myers Lane extension was in line with what was required of similar developments. KOGAP objects to this method and reasoning, claiming that there is no evidence that the past examples were constitutional or in compliance with *Nollan/Dolan*. However, there is no evidence that the past examples were unconstitutional, and no other similar conditions have been challenged on constitutional grounds. In the spirit of fairness, and considering the difficulty in demonstrating rough proportionality, as acknowledged by Oregon courts, it was reasonable for the City to make comparisons to its historical practices.

Finally, the City considered the benefits to the development resulting from the imposed conditions as well, "including but not limited to: increased property values, intensification of use, as well as connections to municipal services and the transportation network." AR Ex. 1-C (#34-3 at 28). Additionally, "the Myers Lane extension would create another full-movement intersection that would allow customers and employees to exit the development in the event of an emergency, such as a fatal traffic accident, particularly if the emergency is located at the intersection of Anton Drive and Garfield Street." *Id.*

KOGAP argues that the City's justifications for rough proportionality are conclusory and that they improperly consider the impacts of future development that is unrelated to the 2022 Application. Certainly, the two-part inquiry that the Supreme Court announced in *Dolan* "was designed to protect the property owner from being singled out for responsibility to make improvements having no or a limited relationship to the requested development, simply because the owner sought to exercise rights incidental to property ownership." *McClure*, 175 Or. App. at fn. 6. However, the Court agrees with the City that it would be impossible to adequately

determine the potential impacts of a land use application without consideration of the surrounding area, including other planned construction in that area. Oregon courts agree, stating that "the inquiry is necessarily forward-looking; it properly considers reasonable projected impacts from permitted uses of the development." *Hallmark*, 193 Or App at 37. The Court addressed this argument more in depth above, as it was more relevant to the discussion regarding an essential nexus. However, to the extent that KOGAP challenges the City's determination of rough proportionality due to its consideration of future planned developments in the area, the Court finds that this was a reasonable consideration.

In sum, the City made several individualized inquiries in making its rough proportionality determination, including the potential for congestion from more vehicles being diverted from Garfield Street into the development, the flow of expected traffic from neighborhoods to the south and west of the development, a historical comparison of the square-footage of similar developments and required dedications, the financial cost to the developer, and the potential benefits to the development itself. Ultimately, the City reasonably determined that there was rough proportionality between the impacts of the 2022 Application and the conditions imposed by the 2022 Approval, namely the Myers Lane extension and the bridge crossing, which the City determined would balance the burdens imposed upon both parties.

## CONCLUSION

The City is not foisting an unrelated improvement onto KOGAP simply because KOGAP wanted to make a minor change in the zoning of its already-approved development. The problems of congestion and local street connectivity may have predated the 2022 Application, but the zoning swap and other changes proposed by the 2022 Application exacerbated those problems, leading the City to impose conditions of approval that would specifically ameliorate

those problems. In particular, the lower price tag of the conditions in 2022 compared to the earlier-projected price of $2,000,000, changed the calculus for the City, making imposition of the conditions less onerous, and roughly proportional. This is the correct function of the approval process, and it satisfies the *Nollan/Dolan* standard. The conditions imposed are not an unconstitutional taking. The City is entitled to summary judgment.

## ORDER

The City's motion for summary judgment on all remaining claims (#37) is GRANTED. Plaintiff's Motion (#36) is DENIED. This case is dismissed, and judgment shall be entered on behalf of the City of Medford.

It is so ORDERED and DATED this ___1___ day of August, 2024.

_____
MARK D. CLARKE
United States Magistrate Judge